BOYDEN *v.* WALKLEY.

1. PRIVATE SEWERS—AUTHORITY TO CONSTRUCT—CLERICAL ERROR.
   A clerical error in a resolution of the common council granting permission to a lot owner to construct a private sewer in the street, whereby authority was given to construct the sewer upon the "westerly" instead of the "easterly" side of the street, as contemplated by all the parties, will not abridge the rights of the owner in a sewer constructed and maintained for several years upon the easterly side.

2. SAME—MUNICIPAL CORPORATIONS—PUBLIC STREETS.
   A city having no sewer system of its own may grant to a citizen, under proper circumstances and restrictions, the right to construct a private sewer in the streets at his own expense, which may be used by him without interference by other citizens.

3. SAME—RIGHTS OF OWNER—INJUNCTION.
   The owner of a private sewer, who has the exclusive right to use the same, may maintain a bill to enjoin its use by other citizens, who connect therewith without his consent, where such use results in clogging the sewer and flooding the owner's house.

Appeal from Ottawa; Padgham, J. Submitted June 10, 1897. Decided July 13, 1897.

Bill by Charles Boyden and Jukie Boyden to enjoin Wyllis S. Walkley and John Juistema from depositing sewage in complainants' private sewer. From a decree for complainants, defendant Walkley appeals. Affirmed.

*George A. Farr*, for complainants.

*McBride & Danhof*, for appellant.

MOORE, J. Prior to 1884, complainants were owners and occupants of a residence and grounds in the city of Grand Haven, upon which they had expended about $20,000. The city had no system of public sewerage. A private sewer existed on Franklin street. Complainants, having arranged with the owners of that sewer to make a connection with it, obtained from the common council of the city of Grand Haven, in 1884, by resolution, permission to construct a private sewer, at their own expense, along Fourth street, to connect with the Franklin street sewer. They at once proceeded to construct this sewer at an expense of upwards of $224, and continued to use it until November, 1895, at which time the defendants sought permission from complainants to make connection with the sewer, and offered to pay for the privilege. Complainants, thinking the sewer not large enough to allow the defendants to make the connection, declined to let them. Defendant Walkley then had a talk with the mayor and an alderman, and says he was advised by them to make the connection with the sewer, if he desired to do so. A sewer was then built from the residences of the two defendants towards Fourth street, upon which street the lots of defendants fronted, until they were merged into one sewer, which was then extended to and connected with the sewer built by complainants. The bill in this case was filed to enjoin defendants from using said sewer, and a decree was made according to the prayer of the bill, from which decree defendant Walkley appeals.

A number of questions are raised by the solicitors for appellant, some of which we do not deem to be very important. The sewer was constructed upon the easterly side of Fourth street. The resolution granting the permission provided for the construction of the sewer on the westerly side of Fourth street. It is claimed that, as complainants did not put the sewer where they were authorized to put it by the resolution, they have no right at all to the sewer where it is. We do not think this claim has any merit. The use of the word "westerly" was evidently an error, probably a clerical error. There is everything to indicate this. To put the sewer on the westerly side of the street would make it necessary to cross Fourth street, when there was no good reason for doing so. After the adoption of the resolution, the sewer was constructed at once, and the municipal authorities have never questioned its proper location.

The important question in the case is: Can a city or village, having no sewer system of its own, grant to a citizen, under proper circumstances and restrictions, the right to construct a private sewer, at his own expense, in the streets of the municipality, which, when constructed by him, may be used without interference by other citizens, without his consent? The charter of the city conferred upon the common council the power to make drains and sewers, and to "compel the owners of all occupied lots within said city to construct private drains or sewers therefrom to connect with some public sewer or drain, and to prescribe the form, dimensions, and manner of construction of such private drains and sewers," etc. Act No. 243, Laws 1871, § 89. In 2 Dill. Mun. Corp. § 688, it is said:

"The power of the public, or of the municipal authorities, representing by delegated authority the public, over streets, is not confined to their use for the sole purpose of travel, but they may be used for many other purposes required by the public convenience. * * * With respect to streets in populous places, the public convenience requires more than the mere right to pass over and upon them. They may need to be graded and brought to a level, and

therefore the public or municipal authorities may not only change the surface, but cut down trees, dig up the earth, and may use it in improving the street or elsewhere, and may make culverts, drains, and sewers upon or under the surface. Whether the municipal corporation holds the fee of the street or not, the true doctrine is that the municipal authorities may, under the usual powers given them, do all acts appropriate or incidental to the beneficial use of the street by the public; of which, when not done in an improper and negligent manner, the adjoining fee holder cannot complain."

The case of *Wood* v. *McGrath*, 150 Pa. St. 451, is an instructive case. The borough council authorized a citizen to construct a private sewer along a public street, without the consent of an abutting lot owner. It was there, as here, contended that the council exceeded its authority when it did this. The court, after referring to cases which sustain the right of municipal councils to grant to an individual the right to lay a water pipe in the street, said:

"But it is too plain for argument that, if a borough has the power to grant to an individual the right to lay a water pipe in the streets for his exclusive use, it must also, by parity of reasoning, possess the entirely similar power to grant permission to a citizen to lay a drain pipe in the streets, to lead off the surplus or refuse water from his building. The objection in the latter case is that the streets can only be used for public purposes, and not for those which are private. * * * The conclusion of the court below was based upon the idea that the abutting owner is the owner of the fee of the land occupied by the street, and the laying of a drain pipe under the street without his consent is an invasion of his right as owner of the land. How fallacious this proposition is, is at once apparent when it is considered that the right of the public in the streets of cities, boroughs, and towns is far more extensive than the mere right to use the surface of the land for the purpose of passage. * * * The argument on the part of the plaintiff proves too much. It denies entirely the right of the borough to allow a private owner along a street which has no drain to connect with a drain on another street, unless the consent of all intervening owners be obtained. In many towns and boroughs of the

Commonwealth, the pipes and drains and sewers are not laid on all the streets, but on a few of the principal streets. It follows from the contention of the plaintiff that all citizens owning properties on the side streets which have no pipes or drains cannot obtain their gas or water, and cannot connect with the sewers and drains, because the municipal authorities cannot give them permission to do so. This certainly is not the law, * * * nor is there any good reason for holding such a doctrine. The streets and alleys of cities, towns, and boroughs are under the control and direction of these municipalities, and they have all the power over them that can lawfully exist. They are the universally recognized channels of communication between the different parts of the municipal territory, and no private interest in or ownership of the subsoil is permitted to interfere with the free use of both the surface and the subsoil by the municipal authorities, or by their delegated substitutes. * * * It does not lie with the adjoining owners to say they admit that the borough authorities can use them for all public purposes, but cannot permit their use for the same kind of purpose by a private citizen, because we have already decided they can do so; and if the use permitted is of the same kind to which the surface or subsoil of the streets may be devoted, they have no more right to object in the one case than in the other."

See *Smith* v. *Simmons*, 103 Pa. St. 32 (49 Am. Rep. 113); *Borough of Susquehanna Depot* v. *Simmons*, 112 Pa. St. 384 (56 Am. Rep. 317); *Stevens* v. *City of Muskegon*, 111 Mich. 72.

The appellant says the council cannot give the exclusive use of the street to an individual. There has been no attempt to do so by the council. If the defendants desire to construct a private drain on this street, there is no doubt the council will give them the right, under proper restrictions, to do so.

It is said the council cannot relinquish its duty to supervise the sewers of the city. That question is not here, and there will be time enough to discuss it when it is here.

It is urged that complainants have not shown irreparable injury, and are not entitled to an injunction. The

testimony is very conflicting as to the effect of the connection made by the defendants; the witnesses for the defendants testifying that, in their judgment, no injury is done. On the other hand, it is made to appear that the sewer worked perfectly for more than 11 years, and gave no trouble until the connection was made, and that, within a short time after defendants began to use the sewer, it became clogged twice, so that the basement of complainants' house was flooded with its contents, and the help of the fire department was required to flush it, so it would perform its office again. Who that values the health of himself and family would put a money price upon the risk incurred in having a defective sewer coming into his dwelling? In *White* v. *Forbes*, Walk. Ch. 114, an injunction was issued to prevent the flooding of land. In disposing of the question, the court said:

"Every man has a right to the enjoyment of his property undisturbed by another, and to be protected in that enjoyment, and what one may consider of little value, another may esteem very highly. The court will not, in cases of this kind, be governed by dollars and cents alone, but will inquire whether the injury is of such a nature that it can reasonably be supposed to lessen materially the enjoyment of property by its owner. The complainant lives on the premises. They are his home. He places a high value on the land, and wants it for a meadow, and he is apprehensive that the flooding of it will generate disease, and render the atmosphere of his dwelling less salubrious."

We have no doubt the common council had the right to and did authorize the construction of this sewer. When constructed by complainants, at their own expense, they had a right to its enjoyment, free from the interruption or interference of private citizens.

The decree is affirmed, with costs of both courts.

LONG, C. J., GRANT and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.