HART v. VILLAGE OF ADAMS et al.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1910.)

1. MUNICIPAL CORPORATIONS (§ 708*)—SEWERS—RIGHT TO DRAIN LAND—CON-
SENT OF PROPERTY OWNERS.
The assent of property owners to have water drained across their land:
by ditches dug by a village gave the village no right to continue such
drains, after the owners objected to their continuance, so that their con-
tinuance could be enjoined; the village not having the right to maintain.
the ditch without the property owners' consent.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §.
1519; Dec. Dig. § 708.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes.

2. INJUNCTION (§ 128*)—ACTION—SUFFICIENCY OF EVIDENCE.

In an action to enjoin a village from digging a ditch on plaintiff's property for drainage purposes, and from discharging unusual quantities of water thereon, evidence *held* not to sustain a finding that the nuisance created on plaintiff's property was solely the result of decayed vegetation and standing water, and in no part due to débris carried down by the village.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 278; Dec. Dig. § 128.*]

3. MUNICIPAL CORPORATIONS (§ 708*)—SEWERS—DRAINAGE—RIGHT TO CONSTRUCT DITCHES—NECESSITY OF LEGAL PROCEEDINGS.

A village desiring to construct ditches over private property for the purpose of draining it and that part of the village should acquire the right to do so by legal proceedings against the property, where the owner does not consent to such ditches.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1519; Dec. Dig. § 708.*]

Appeal from Special Term.

Action by Margaret Hart against the Village of Adams and Eugene A. Boomer and others, composing the board of health of the village of Adams. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Atwell & Rogers, for appellant.

Slate & Waite, for respondents.

WILLIAMS, J. The judgment should be reversed and a new trial granted with costs to the appellant to abide event.

The action was brought to obtain a permanent injunction restraining the defendants, the village of Adams, and its board of health, from digging ditches on plaintiff's property for the purpose of draining surface or other water into plaintiff's trout brook, and from discharging surface or other water in unnatural and unusual quantities upon plaintiff's premises, and surface water or other drainage into plaintiff's brook at any point thereon above plaintiff's premises. The defense was, in substance, that the defendants desired merely to clean out a natural water course which plaintiff had stopped up, or had allowed to become stopped up, thereby causing a nuisance. The court dismissed the complaint, finding that the brook in question was a natural water course; that about 1879 plaintiff's predecessor in title to the property changed the course of the brook by constructing a canal, thus facilitating the flow of water through the brook, and the water course ever since that time has flowed where it now does; that the channel of said water course, as so changed, has from time to time become obstructed with vegetable growth and materials carried down the stream, and, on several occasions, these obstructions have been removed by the village; that in 1908 these obstructions caused the water to become stagnant, clogged the water course where it crossed plaintiff's premises, and thus created a nuisance detrimental to the public health; and that the village has never drained any sew-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

age or unwholesome matter into the brook, and no drainage from the village has ever reached the water course except surface water in reasonable and natural quantities, and the reasonable use of the stream. If these findings are supported by the evidence, of course, the dismissal of the complaint was proper, and the judgment should be affirmed. The only questions involved here are as to the facts. There is no dispute about the law applicable, when once the facts are settled.

It seems to me the facts established are substantially as follows: There is, as stated in the fourth finding of fact, a stream known as "Cemetery brook" coming down from northeast of the village of Adams, through the westerly part of the village, through plaintiff's lands and across Railroad street and emptying lower down into Sandy creek. Railroad street runs easterly and westerly through the village, and Sandy creek is a large stream running westerly through the village, parallel with Railroad street. This Cemetery brook is the stream that plaintiff claims is being polluted with sewage from the westerly portion of the village. The railroad runs northerly and southerly through the western portion of the village, and any sewage there is in that portion of the village must go westerly or southerly towards Cemetery brook. The village has no sewer system in this part. It has a waterworks system by means of which some water is thrown into its streets and drains in various parts of the village. There is a culvert through the railroad embankment just north of the depot, and through this a small stream of water runs from a depression to the east. This depression in former years was fed by a stream from the easterly part of the village, but most, if not all, the water from this stream now flows down Main street southerly and empties into Sandy creek above the railroad. Some drainage of surplus water west of Main street, however, and perhaps some water from the stream above, finds its way into the depression just east of the railroad, and flows westerly through the culvert and the westerly part of the village towards Cemetery brook. In early years this stream ran in a generally southeasterly course from the locality of the culvert until it passed Elmwood avenue (a road from Railroad street north to the cemetery), and crossing that went into lowland, and found its way in no particular single channel into Cemetery brook. Along in the '70's, the course of this stream west of Elmwood avenue was changed from about the intersection of Phelps street with that avenue, and ran along that avenue southerly. This change was made by the owners of the premises just west of the avenue, with the assent of the street commissioner of the village, in order to relieve their lands from the water, and thus enable them to use them for garden purposes. This stream before it reached Railroad street turned westerly to the lowlands about the Hart line, and then reached the Cemetery brook over the lowlands on the Hart property through no very well-defined channel. There apparently was a depression along from Cemetery brook up the northerly side of Railroad street to a point a short distance westerly of the Hart line, and thence northerly upon the Hart property to the Cemetery brook above. This depres-

sion the village caused to be dug or cleaned out along up Railroad street recently before this trouble began, and then an effort was made to open up a ditch over the Hart property to connect the stream down Elmwood avenue and over the adjoining lands to the Hart line with the depression on and northerly from Railroad street. This the owner of the Hart property opposed, and the village sought by force to bring about. This was one of the objects the plaintiffs sought by this action to restrain. I think the court was in error in its sixth finding of fact, if it intended to state that the change in the stream at Phelps street and Elmwood avenue was made by plaintiff's predecessor in title. The change referred to by the witnesses as made by him was on the Hart property and was the old creek bed, so called from Railroad street northerly to Cemetery creek. It was crooked and was straightened. The change made at the intersection of Phelps street and Elmwood avenue was not on the Hart property at all. I do not think it can be said that this stream from Phelps street and Elmwood avenue down is a natural stream or water course. It was an artificial waterway, all along down to the Hart line, when the trouble began. Nor do I think that any work by the village by way of digging upon the Hart property to connect that stream with the ditch running north from Railroad street to the Cemetery brook was with the assent of the owners of that property. The most that can be said is that by allowing the water to run down to and upon the Hart property at its line it assented to the same. But even such assent gave the village no right to continue it after the consent was withdrawn and objection was made to its continuance. There was undoubtedly a necessity to clean out the ditches down there, and to connect the stream and the ditch north from Railroad street by ditching in order to remove the obstructions from various sources and secure a free flow of water into Railroad street and along down into Cemetery brook where it crossed that street. But the village had no right to go on the Hart property to make such improvement without plaintiff's consent, and it should be enjoined from so doing.

The serious aspect of this controversy, however, is that the village was attempting to use this stream as an outlet for practically all the surface water drainage and sewage of the part of the village west of the railroad besides taking more or less from east of the railroad through the culvert. In this area there were 20 dwelling houses, 24 outdoor closets, 27 barns and outbuildings, 2 pigpens, 1 cattle pen, 1 coal shed, 1 feed and grain storage building, 1 malt house, creamery, water tank, a small reservoir, and 2 whey vats. Not only the surface water falling upon the streets, buildings, and lands, but also more or less of the artificial supply from the waterworks system, flowed down this street and upon plaintiff's lands.

From the very nature of things, the facts stated in the eighth and ninth findings cannot be true under the evidence. It can hardly be claimed the nuisance on the Hart property was the result of decayed vegetation, and standing water alone, and was in no part due to sewage carried down from the village.

This part of the village needs relief by way of a sewer system. Sandy creek is but a short distance south of Railroad street, and the system could easily be connected directly therewith, without running across the Hart property or into Cemetery creek, at all. More or less of the surface water, drainage, and sewage in the center and easterly portion of the village is conducted down Main street and into Sandy creek east of the railroad. Certainly, if the village insists upon using the way it has been struggling for over the Hart property and through Cemetery creek, it should acquire the right to so do from plaintiff by legal proceedings.

Upon the evidence in this record, it seems to me the judgment appealed from cannot be sustained. All concur.