## GRAFNITZ v. HOWELL et al.   (No. 8520.)

(Court of Civil Appeals of Texas. Galveston. April 26, 1924. Rehearing Denied May 22, 1924.)

**Municipal corporations** ⬌710 — **Connection with service sewer held wrongful.**

Under city ordinance prohibiting running of service sewer through block and across intersecting street to another block, and prohibiting connection of sewer with sewer on another's lot without owner's permission, *held*, that one cannot connect sewer to service sewer in another block across street, though owner unlawfully extended sewer across such street.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by James G. H. Grafnitz against R. G. Howell and another. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Ross & Wood and R. Wayne Lawler, all of Houston, for appellant.

Hardway & Cathey and W. H. Dunlay, all of Houston, for appellee Howell.

Sewall Myer and W. Ray Scruggs, both of Houston, for appellee City of Houston.

LANE, J.  A public sewer constructed by the city of Houston runs along McKinney avenue from west to east, passing block 25 of the Oakhurst or Houston Street Railway Company addition. Said block 25 lies north of and adjacent to McKinney avenue, and is bounded on the west by Milby street and on the north by Walker avenue. Block 24 of said addition lies just north of block 25, and is separated therefrom by Walker avenue.

Appellant Grafnitz is the owner of lot 1 in block 25, it being the northwest corner lot of said block, and he also owns lot 12 in block 24, lying just north of lot 1 in block 25, the two being divided by Walker avenue. The two lots owned by appellant Grafnitz are both within 300 feet of the public sewer contructed by the city along McKinney avenue.

Appellee Howell owns lot 11 in block 24, lying adjacent to and just east of lot 12 in block 24 owned by Grafnitz, and Mrs. Mary Avery owns lot 10 lying adjacent to and east of lot 11 owned by Howell.

By subdivisions 6, 10, and 11 of section 1092 of the Revised Ordinances of the city of Houston it is provided as follows:

"*Sewer Connections—Separate—*(6).  Every building shall be connected with a public sewer where there is any such sewer in the street or alley adjoining such building or within three hundred (300) feet thereof. Where two or more buildings are located on one lot fronting 125 feet or less on street, and this lot is owned by one party, one sewer connection to city main may be used for all; otherwise each building shall be independently connected, but in such cases the common stem running to city sewer and to which the sewer from each house connects, shall in all cases, where possible, be run in the sidewalk."

"*Sewer—From One Lot to Another—*(10).  No person shall run or cause to be run a sewer through from his lot or portion of a lot, or from any structure thereon, and connect with a sewer on or from another person's lot, unless permission is granted by the city engineer and by the owners of such other lot.

"*Sewer Connections—When Compulsory—*(11).  The property owners who own real property within the distance of three hundred (300) feet of any public main or lateral sewer, shall, upon notice in writing from the city health officer, make proper and permanent connection with said sewers, and remove all surface privies and cesspools; and any person owning such real property who, after being given reason-

able notice by order of the city health officer, shall fail to connect with said sewers, or remove or fill up such privies or cesspools, shall be guilty of an offense, and each day such failure shall continue shall constitute a separate offense."

In or about the month of February, 1918, James G. H. Grafnitz was duly served with proper notice to connect his premises on lot 1, block 25, with the public sewer of the city in McKinney avenue. In obedience to said notice Grafnitz made connection with said public sewer at or near the corner of block 25, with a 6-inch sewer which he extended along Milby street about 115 feet to the southwest corner of his lot 1, in block 25. At this point he extended it into and across said lot from south to north, and about a month or six weeks later he extended his sewer across Walker avenue to his lot 12 in block 24.

Appellant Grafnitz made no application to the city of Houston for permission to extend his sewer across Walker avenue to his lot on block 24, but the plumber whom he had employed to do the work got permission so to do. It is not shown whether such permission was in writing or only oral.

The length of the sewer so constructed by Grafnitz was 287 feet, and cost him $300.

After Grafnitz had constructed his sewer across Walker avenue, he gave Mrs. Mary Avery, owner of lot 10 in block 24, written permission to connect her premises with his sewer at a point where it crossed Walker avenue, for a consideration, paid by her, of $60. Grafnitz testified that at the time he gave Mrs. Avery permission to connect with his sewer it was understood that Mrs. Avery would not let any one else connect with her part of the sewer, and there is no dispute of such testimony. Mrs. Avery constructed a 6-inch sewer from her premises into Walker avenue, and thence westward along said avenue, passing lot 11 in block 24 owned by appellee Howell, and made connection with Grafnitz's sewer in Walker avenue.

Thereafter appellee Howell made written application to the city authorities for permission to construct a sewer from his premises to a connection with the sewer on Mrs. Avery's premises, which connected with Grafnitz' sewer, and such permission was granted, over the protest of appellant, Grafnitz. Howell made such connection, and Grafnitz brought this suit against Howell and the city of Houston to compel them to cease using his sewer for carrying away of appellee Howell's sewerage, and to compel them to disconnect the sewer constructed by Howell and connected with his sewer in the manner hereinbefore stated.

The defendant Howell answered by general demurrer, general denial, and by special answer to the effect that his connection with the plaintiff's sewer was constructed and maintained strictly in conformity with the city ordinances of the city of Houston, and by the authority of said city. The city of Houston answered by general demurrer and general denial. The cause was tried before the court without a jury, and judgment was rendered denying the injunction prayed for, and from such judgment James G. H. Grafnitz has appealed.

It is the contention of appellant that his sewer was constructed to connect with both of his premises, one on lot 1, block 25, and the other on lot 12, block 24, in conformity to and under the requirements of subdivisions 6, 10, and 11 of section 1092, chapter 37, of the Revised Ordinances of the city of Houston, which have been hereinbefore set out; that such construction was not voluntary, but was compelled by said ordinances; that said sewer so constructed by him is his private property, and that neither its construction nor use is controlled or regulated by article 2 of chapter 37, Revised Ordinances of the city of Houston, as asserted by appellee Howell, and that neither Howell nor any one else has the right to make a connection therewith without his consent, or to use same to carry away their sewerage; and that this is true, irrespective of whether his sewer was lawfully or unlawfully constructed, and therefore the court erred in not granting the injunction prayed for.

Counsel for appellee opposing the contention of appellant insists that the sewer constructed by appellant, especially that part thereof which crosses Walker avenue, is a public sewer, such as is provided for by article 2 of chapter 37, Revised Ordinances of the city of Houston, relating to lateral sewers, and is one with which other property owners may, under the provisions of the ordinance last mentioned, connect, notwithstanding the protest of appellant. That if, however, it should be held that it is not a lateral sewer previously constructed only to serve his own premises situated on his lots 1 and 12, blocks 25 and 24, still other property owners may be lawfully permitted to connect therewith, in that said service sewer was unlawfully and wrongfully laid across Walker avenue, and in that appellant allowed others, for a valuable consideration, to connect therewith, and that under such circumstances the equitable relief prayed for should not be granted.

Section 1094 of the Ordinances of the city of Houston provides for the constructing of lateral sewers, and provides that owners of property which is so situated with reference to the public sewer as makes it practicable to connect with such sewer, may, with the consent of the city, at their own cost and expense, lay and construct a lateral sewer in and along the streets and ways of the city, and connect same with said public sewer, under conditions set forth in other articles relating to constructing lateral sewers.

By section 1095 it is provided that persons

constructing lateral sewers shall, before constructing same, obtain a permit so to do from the city council, or such officer as may be designated to grant such permit, and shall lay and construct the same at their own costs under the direction of the city engineer, or such other officer or person as may be designated to supervise and direct such construction, and that no permit shall be granted for such construction until the person applying therefor shall have signed an application agreeing to all the conditions set forth in subsequent articles.

Conditions set forth in sections 1096, 1097, 1098, 1099 et seq. are:

First. That the person applying shall, before the permit is granted, give a bond conditioned (1) that he or she will restore the street, pavement, or sidewalk and passways along which the sewer is constructed to as good condition as they were before such construction; and (2) to hold the city harmless for any injury or damage resulting to third persons by reason of such construction.

Second. That no permit shall be granted for the construction of a lateral sewer of less dimension that 8 inches; nor shall any permit be granted for the construction of any lateral sewer which, in the judgment of the city council or officer charged with the supervision of such construction, is not of sufficient size and laid in such manner as will be consistent with the furtherance of the general system of sewerage adopted by the city, or is such as will not interfere with the proper development of the city's sewer system.

Third. That no permit for the construction of such lateral sewer shall be granted until the person applying therefor shall file with the city engineer a statement showing (1) where said lateral sewer is to be located; (2) the number of lots owned by the applicant abutting on the proposed sewer; (3) the character of such sewer; (4) the number of lots which said sewer is capable of serving; (5) the description of the lots owned by said applicant; (6) the number of connections which said applicant intends to make to said lateral sewer, and whether or not such sewer is designed to serve an addition owned, managed or controlled by the applicant; and (7) the cost of such construction.

Fourth. That when such showing is made the council shall determine and fix the sum to be paid to the constructors by persons making connections with such lateral sewer; that after the construction of such sewer permits shall be granted to persons who shall have complied with all the provisions of the city ordinances, and have deposited with the city engineer, for the use and benefit of the persons constructing the sewer, the sum due by them as fixed in said schedule; provided that, where such lateral sewer is to be laid entirely within, along, or in front of or to serve only the property owned by the person or persons applying for such permit, the construction and laying of said sewer shall, as to all of the said property abutting thereon or being served thereby, be and constitute a dedication of said sewer, and persons owning such lots shall be deemed to have the full right to make service connections therewith from such sewer without paying or contributing any part of the cost of the laying thereof, and it shall not be necessary for such persons to make any deposit with the city engineer.

Fifth. That, if at any time after the construction of such lateral sewer persons desire to construct from the same an additional lateral sewer, they shall have the right upon proper application to the city council so to do, provided they first deposit with the city engineer such sum as the city council may fix and declare to be reasonable for the benefit of those who originally constructed and paid for such lateral sewer, but for all other intents and purposes said lateral sewer shall be a public sewer and that, should it be proper, necessary, or advisable to construct a public sewer from said lateral sewer, the city shall have the right so to do without charge or cost to the city.

Sixth. That the term "lateral sewer" means any sewer run off from any line or public sewer of the city for the purpose of furnishing a feeder from which service connections can be run, and not run for the purpose of making a through line of sewers. And the term "service connection" means a connection or line run from any main or lateral sewer for the purpose of serving any house or premises.

Seventh. That all service connections shall be at least 6 inches in diameter, and where they are sought to be run laterally down a street passing other property they shall be laid under the provisions of this article applicable to lateral sewers as to the kind of application to be made therefor and the right and privilege of other persons connected therewith; provided that no service line shall ever be allowed to run laterally through one block and across the intersecting street but shall be confined to the limits of the block; and provided further, that where feasible so to do the plumbing inspector shall require a lateral sewer line rather than a service line to be constructed; and provided further, that the plumbing inspector shall have the right and it is hereby made his duty to require all persons to connect with the same service line in the block wherever possible so as to prevent the laying of numerous service lines within the streets and under the sidewalks of the city of Houston.

By section 1102 all sewers constructed under the provisions of the several articles mentioned above are placed under the regulatory control of the city of Houston, and it is therein provided that all connections with such sewers shall be governed and regu-

lated in the same manner as connections with any sewers, except that the right is reserved to persons constructing same to receive for private service connections the compensation fixed by the city council, and to persons who have constructed or contributed to the costs of construction by paying for connection therewith the right to receive from persons constructing their lateral off from same such amount as so fixed by the city council, if any.

It will be observed that, as stated in the seventh subdivision hereof, it is provided by said ordinances that no service line shall ever be allowed to run through one block and across the intersecting street onto another block, but shall be confined to the limits of the one block, and that the plumbing inspector shall have the right, and it is made his duty, to require all persons to connect with the same service line in the block whenever possible so as to prevent the laying of numerous service lines within the streets and under the sidewalks.

The provision last stated is, we think, contradictory to subdivision 10 of section 1092, hereinbefore quoted, which provides that "no person shall run or cause to be run a sewer through from his lot or portion of a lot, or from any structure thereon, and connect with a sewer on or from another person's lot, unless permission is granted by the city of Houston and the owner of such other lot," but it is made clear, we think, that no person whose property and premises are situated on one block can lawfully connect a sewer running from his property to the service sewer constructed to carry off the sewerage of properties of another situated on a different block, as it is specially provided, as shown, that "no service line shall ever be allowed to run laterally through one block and across an intersecting street, but shall be confined to the limits of the block."

It seems clear to us that it was the purpose of the city council, by the ordinances referred to, to provide that no premises situated on one block should be connected by a service sewer to the service sewer serving premises situated on another block across or on the opposite side of a public street, not even when both properties are owned by the same person.

That the sewer constructed by appellant leading from the public sewer in McKinney avenue to his lot on block 25 is, according to the provisions and definitions of article 2, supra, a "service connection" only, there can be no doubt, we think. The definition of a "service connection" given in subdivision 1100 of said article clearly makes it such. Appellees do not seem to dispute that the line next above referred to was, as originally constructed, a "service line" only, but they do contend that as appellant had, after he had constructed it into his lot on block 25, made an extension of it, running it across Walker avenue into his lot on block 24, in violation of the ordinances, it became a "lateral sewer," but that, whether it so became or not, appellant had, by his unlawful act in extending it across the street and into block 24, forfeited his exclusive control over it, and by reason of such unlawful act property owners, whether their property was situated in block 25 or 24, could, by permission of the city council, connect their premises with it, notwithstanding the protest of appellant.

It may be conceded that the extension of the "service line" from appellant's premises situated on block 25 across Walker avenue to a connection with his premises on block 24 was without authority of law, unlawful and wrongful, and that the city could cause the removal of the same, but such unlawful act would not make such "service line" a "lateral sewer," as defined in the ordinances, or elsewhere; nor would such act give appellee Howell the right, even with the consent of the city council, to connect his premises situated on lot 11 of block 24 with appellant's "service line," constructed originally to carry sewerage from premises situated on block 25, as to do so would be clearly in violation of that part of subdivision No. 1101 of article 2 of the ordinances of the city, which provides that "service lines" shall be confined to one block only.

It is apparent from what we have said that we are of opinion that appellee Howell had no right to in any manner connect a sewer leading from his premises situated on block 24 with the service sewer of appellant originally constructed to serve his premises situated on block 25, as such connection is specifically forbidden by subdivision 1101 of article 2 of the city ordinances. We therefore hold that the court erred in refusing the injunction prayed for by appellant.

As we have held that there is no ordinance of the city of Houston providing for or requiring the connection of service sewers, or service connections, constructed for the purpose of carrying the sewerage from premises on one block with such service sewers on another block, but that, to the contrary, such connection is positively forbidden by subdivision 1101 from which we have hereinbefore quoted, the question raised by appellant as to whether or not an ordinance requiring the owner of a service sewer or service connection, serving his premises on one block, to permit others who own premises on the same block to connect therewith is unconstitutional, is not involved in the present case, and it is therefore unnecessary that we should answer such question; however, if we were called upon to do so, we would be inclined to hold that, where, as in the present case, one has been compelled by law to run a line of sewer from his premises to a connection with a public sewer of the city for

the purpose of carrying off the sewerage from his premises, such service sewer becomes and is the private property of its owner, and that an ordinance requiring him to permit others to enter upon his property and connect their service sewer to his service sewer would be unconstitutional and void.

As tending to support our conclusion, we quote from the following authorities:

Oak Cliff Sewerage Co. v. Marsalis, 30 Tex. Civ. App. 42, 69 S. W. 176:

"The laying of the sewer in the public streets did not make the same public property, and the city did not, upon its incorporation, take title thereto.

"The sewer was not dedicated or donated to public use by reason of its having been placed in the public streets, in the absence of an intention on the part of the owner to so dedicate * * * same."

Carroll v. Connor (Sup.) 93 N. Y. Supp. 1077:

"One who is required by the town authorities to drain his lot, and, in order to do so, lays a sewer along the street, with their permission, has a right to the exclusive use of the sewer, and other property owners have no right to make connections therewith."

McQuillin, Municipal Corporations, vol. 4, par. 1427, at page 3027:

"A property owner who is required to drain his lot and to do so constructs a sewer along a street, with the permission of the municipality, is entitled to the exclusive use of such sewer."

And the same authority, on page 3027:

"Courts will not permit the arbitrary exercise of a power by a municipal corporation whereby an individual will be deprived of rights of a private drain. * * * They (private sewers and drains) cannot be taken by the public or damaged in the construction of other sewers by the municipality without compensation to such private owners, since such private sewers and drains are viewed as property within the meaning of the constitutional provision relating to the exercise of eminent domain."

Again on page 3027:

"Under power to make drains and compel the owners of occupied lots to construct private drains or sewers therefrom to connect with some public sewer or drain, it has been held that a municipal corporation has power to grant the right to a property owner to construct at his expense, a private sewer in the street for his exclusive use, free from interference by other citizens"—citing Boyden v. Walkley, 113 Mich. 609, 71 N. W. 1099.

Slaughter v. O'Berry, 126 N. C. 181, 35 S. E. 241, 48 L. R. A. 442:

"The city being the owner of a public sewerage, it has the right, and it is its duty to protect the same from improper uses and connections. But this should be done in a reasonable manner, and so as not to affect private rights further than is necessary for that purpose.

*Where it becomes necessary to invade private property, it must be done with the consent of the owner or under the doctrine of eminent domain. * * * Neither can the city, in the exercise of its corporate powers, interfere with the rights of the owner over his property, nor with his personal rights where it is not necessary to do so for the public benefit."* (Italics ours.)

Hart v. Adams, 140 App. Div. 663, 125 N. Y. Supp. 652:

"If the owner of private property will not consent to the use of his property for drainage purposes, the municipality must resort to legal proceedings to acquire such right."

See, also, in this connection McQuillin, Municipal Corporations, vol. 4, p. 3032.

Having reached the conclusion that appellant, James G. H. Grafnitz, is entitled to the injunction prayed for, it becomes our duty to reverse the judgment of the trial court, and to here render judgment for appellant, requiring appellee Howell to disconnect the sewer constructed by him from his lot 11 on block 24 from the private sewer of appellant, and to cease to use the same for any purpose whatever, and enjoining the city of Houston from issuing a permit to said Howell to connect his said sewer with the sewer of appellant, and it is so ordered.

Reversed and rendered.

On Motion for Rehearing.

On motion for rehearing appellees complain of the following findings of this court: First, appellant testified that at the time he gave Mrs. Avery permission to connect with the sewer constructed by him it was understood that Mrs. Avery would not let any one else connect with her part of the sewer, and that there was no dispute of his testimony; second, that the extension of the sewer of appellee across Walker avenue was made about a month or six weeks after it had been laid in his lot 1, block 25; third, that it was not shown whether the permission obtained by appellant's plumber to lay the sewer across Walker avenue was verbal or in writing.

We confess error in the particulars pointed out, and at appellees' request we correct such findings as follows:

Mrs. Bundy, a daughter of Mrs. Avery, a witness for appellee, testified that it was not understood at the time appellant gave Mrs. Avery permission to connect with his sewer that she was not to let any one else connect with her part of the sewer.

It was also shown that when the sewer of appellant was constructed into his lot 1, block 25, it was completed across Walker avenue practically at the same time and not a month or six weeks later, as found by us.

While appellant testified that he did not know whether the permission obtained by his plumber to lay his sewer across Walker

avenue was verbal or written, his plumber testified that such permission was verbal only.

Upon request of appellee so to do, we make the following additional findings:

First. By permission of appellants the several parties owning premises situated on lots 2, 4 and 12 in block 25 made connection with his sewer and paid appellant a monetary consideration for making such connection.

Second. Appellee Howell, before constructing and connecting his sewer with the sewer system of appellant, deposited with the city engineer the sum of $31.25, that being the amount prescribed by the city council for connections when made with sewers known and defined by the ordinances as "lateral sewers."

Third. It was shown that up to the time of trial the 6-inch sewer laid by appellant had not been overtaxed and clogged by excessive use.

Having made the corrections in our findings as requested, and still being of opinion that we correctly disposed of the cause, we overrule appellees' motion for rehearing, with this additional comment:

It seems clear to us that the sewer laid by appellant was not a "lateral sewer" as that term is used in the ordinances referred to in our opinion, but that it is only a service sewer or service connection, which is by the provisions of said ordinances to be not less than 6 inches in diameter, while the lateral sewer is to be not less than 8 inches in diameter.

It seems clear to us that, since the ordinances inhibit the extension of any service line to run through one block and across an intersecting street, and since that by said ordinances it is required that such lines shall be confined to the limits of the one block, the permission granted by the city engineer to appellant to lay his service sewer, which he had constructed to serve premises on block 25, on and across Walker avenue was contrary to law and void. It is, we think, evident that the city council intended by said ordinances to prevent the overtaxing and clogging of such service sewers, and to do so provided that connections made therewith should be confined to the one block.

---

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes