CHRISTOPHER CARLI *vs.* STILLWATER STREET RAILWAY & TRANSFER COMPANY.

October 27, 1881.

**Railway upon Public Street—Additional Servitude.**—The construction and maintenance by the defendant, under an ordinance of the city of Stillwater, upon a public street, of a railroad operated by animal power, for the main purpose of transferring freight cars from the terminus of one line of railroad to that of another running into the city of Stillwater, and thereby connecting such railroad lines, is the imposition of an additional servitude upon the street, so as to entitle the owner of the servient estate to compensation.

**Riparian Owner—Exclusive Occupancy of Bed of Stream, Subject only to Right of Navigation.**—The owner of land bounded by a navigable stream has the right, by virtue of the ownership of the bank, to enjoy free communication between his abutting premises and the navigable channel of the river, and may fill out into the river, beyond low-water mark, to navigable water, so as to make the shore available for the uses connected with navigation, and to this extent is entitled to the exclusive occupancy of the bed of the stream, subordinate and subject only to the rights of the public with respect to navigation, and such needful rules and regulations for their protection as may be prescribed by competent legislative authority; and such riparian rights are property, and cannot lawfully be taken for public use without just compensation; following *Brisbine* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 114.

Plaintiff is and has been for many years the owner of certain lots in the city of Stillwater, which abut on Lake St. Croix, which is navigable water, and front on Main street. These lots are cut into two parts by an alley, thirty feet wide, running parallel to the lake, and the portions between the alley and the shore are valuable for use and are used in connection with navigation, and are approached on

the land side by means of the alley. As stated in the opinion, this alley has been in use as a public street for more than fifteen years, and is "made land," having been originally covered by the waters of the lake. The defendant, under the authority of an ordinance of the city of Stillwater, has constructed its railroad through this alley, in the manner and for the purposes recited in the opinion, without condemning the same, or making compensation to, or consulting the wishes of plaintiff.

This action was commenced in the district court for Washington county, by plaintiff, to restrain the defendant from maintaining and operating its railroad on such alley, and defendant appeals from the judgment of the court, *Crosby*, J., presiding, directing that a writ of injunction issue, unless defendant shall at once institute and promptly prosecute condemnation proceedings.

*McCluer & Marsh,* for appellant.

The *locus in quo* lying below low-water mark in navigable water, and not being made by natural accretion, plaintiff never acquired any title thereto. *Benson* v. *Morrow,* 61 Mo. 345; *Railroad Company* v. *Schurmeir,* 7 Wall. 272; *Barney* v. *Keokuk,* 94 U. S. 324; *McManus* v. *Carmichael,* 3 Iowa, 1; *Bullock* v. *Wilson,* 2 Porter, (Ala.) 436; *Brambridge* v. *Sherlock,* 7 Am. Law Reg. 720; *Baker* v. *Lewis,* 33 Pa. St. 301; *Bowman* v. *Wathen,* 2 McLean, 376; *Elder* v. *Burrus,* 6 Humph. 358; *Wilson* v. *Forbes,* 2 Devereux, 30; *Collins* v. *Benbury,* 3 Ired. 277; *Atlee* v. *Packet Co.,* 21 Wall. 389; *Diedrich* v. *Northwestern Union Ry. Co.,* 42 Wis. 248; *Shrunk* v. *Schuylkill Nav. Co.,* 14 Serg. & Rawle, 71.

The use made by defendant of the alley is no additional servitude, and is consistent with the uses for which the dedication was made. Dillon on Mun. Corp. §§ 565–571, 575; *People* v. *Kerr,* 27 N. Y. 188; *Hobart* v. *Milwaukee City R. Co.,* 27 Wis. 194; *Haight* v. *City of Keokuk,* 4 Iowa, 199; *Milburn* v. *City of Cedar Rapids,* 12 Iowa, 246; *Lexington & Ohio R. Co.* v. *Applegate,* 8 Dana, 289; *Wolfe* v. *Covington & Lexington R. Co.,* 15 B. Mon. 404; *Peddicord* v. *Baltimore, etc., R. Co.,* 34 Md. 463; 1 Redfield on Railways, 324; *Craig* v. *Rochester City & Brighton R. Co.,* 39 N. Y. 404, dissenting opinion of Mason, J.

*J. N. & I. W. Castle,* for respondent.

CLARK, J.   1. It is the law of this state that the construction and maintenance of an ordinary railroad by legislative authority upon a public street is the imposition of an additional servitude upon the soil, so as to entitle the owner of the servient estate to compensation. *Schurmeier* v. *St. Paul & Pacific R. Co.*, 10 Minn. 59 (82;) *Winona & St. Peter R. Co.* v. *Denman*, Id. 208 (267;) *Gray* v. *First Division St. Paul & Pacific R. Co.*, 13 Minn. 315; *Harrington* v. *St. Paul & Sioux City R. Co.*, 17 Minn. 215; *Adams* v. *Hastings & Dakota R. Co.*, 18 Minn. 260; *Kaiser* v. *St. Paul, Stillwater & Taylor's Falls R. Co.*, 22 Minn. 149; *Brisbine* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 114.

In order to determine whether the case in judgment comes within the authority of these cases, it is requisite to inquire, to some extent, into the grounds upon which they must rest.   And in the first place, it is obvious that inasmuch as the public, under the laws of this state, has only an easement in the land dedicated or taken for a public street, the uses to which it may be put by public authority must depend upon the character of that easement.   The public use cannot lawfully go beyond, but must be confined within, the purposes for which the easement was granted by or acquired from the original owner of the soil.   When a man dedicates to the public land for a highway, street, or alley, he must be supposed to have in view the benefits which will result to his remaining lands from the particular use to which he dedicates it.   And when land is taken for a street, the compensation therefor is adjusted with reference to the benefits and injuries which the proprietor of the remaining land will receive and sustain by reason of the opening of the street.   And these benefits and injuries will be estimated with reference to the identical use to which the property taken is appropriated.

Bouvier defines a highway as "a passage, road, or street which every citizen has a right to use;" a street as "a public thoroughfare or highway in a city or village."   The following definitions by the courts may also be adverted to:   By the dedication "the public acquire nothing beyond the mere right of passing and repassing upon the highway, and in all other respects the rights of the original owner remain unimpaired."   *Williams* v. *Central R. Co.*, 16 N. Y. 97. The easement of a highway "embraces all public travel, not pro-

hibited by law, on foot, in carriages, omnibuses, stages, sleighs, or other vehicles, as the wants and habits of the public demand." *Elliott* v. *Fair Haven & W. R. Co.*, 32 Conn. 579. "The right of the public in a highway consists in the privilege of passage, and such privileges as are annexed as incidents by usage or custom, as the right to make sewers and drains, and lay gas and water pipes." *State* v. *Laverack*, 34 N. J. L. 201.

It can hardly be questioned that the primary and fundamental purpose of a public highway, street, or alley is to accommodate the public travel; to afford citizens and strangers an opportunity to pass and repass, on foot or in vehicles, with such movable property as they may have occasion to transport; and every man has the right to use upon the road a conveyance of his own at will, subject to such proper regulations as may be prescribed by authority. In cities custom has sanctioned the use of the streets for sewers, and for water and gas pipes; and it is probable that at no distant day pipes for the transmission of steam for heating and mechanical purposes will be added. It is to be observed that sewers and pipes are laid beneath the surface of the street, so as to be no impediment, after they are laid, to the public travel, and no detriment to the abutting owner. The latter has a peculiar interest in the street somewhat different from that of the general public. He may maintain an action to suppress a nuisance in the street, on the ground of a special injury to himself. It is his right to have free access from his abutting property to the street, and to have the street kept in a condition for its primary and principal use, so as to enable the public readily to gain access to his residence or business; and the value of his property depends largely upon the preservation of this right. The right is, however, subordinate to the public convenience, of which the public authorities having control of the streets are the judge. He cannot, therefore, recover consequential damages occasioned by a change of grade made by the proper authority, unless enabled so to do by statute.

We do not think this easement for public travel is to be limited to the particular modes of travel in use at the time the easement was acquired, but that it extends to and includes all such new and im-

proved methods of travel, the utility and general convenience of which may be afterwards discovered or developed, as are in aid of the identical use for which the street was acquired. The regulation and control of highways, streets and alleys, and of the use thereof, for the purposes for which they were created, is in the legislature, and it is well settled that this power of control may be delegated to and reposed in the municipal corporations within which the streets are situated; but it follows, from what has been said, that the legislature has no power, directly or indirectly, to impose a new servitude upon the soil, or to subject it to a new burden injurious to the owner of the servient soil, without making him the just compensation required for the taking of private property for public use.

The construction and operation of an ordinary railroad in a public street having been decided to be a new use of the street, and therefore an additional burden upon the soil, with a view to ascertain whether the defendant's railroad comes within the reasons of these adjudications, it is next necessary to consider the character of the use to which the defendant has, by the authority of the city council, so far as it had any power in the matter, put the alley in question.

By reference to the findings of the court, it appears that the principal, if not the only purpose of the track now constructed and proposed to be maintained and operated, is for a transfer track between two lines of railroad running into the city of Stillwater. It connects these lines, which terminate in different parts of the city. It is built partly upon the alley, and partly upon property acquired for the purpose from private owners by condemnation and purchase. It has never been used, and it is not proposed to use it, to carry passengers. Its only use, so far as appears, is to transfer freight cars, of the kind ordinarily used on railroads, from the terminus of one railroad to that of another railroad. It is not proposed, as the reason and object of its existence, to receive freight at any point on the street or alley, or to deliver freight at any point thereon.

It is evident from all the facts that this road is not located on the street because its business is to be derived from the street, and that its purposes would certainly be equally well fulfilled if it was on property of which the defendant should have the exclusive use. On the

other hand, the public travel on the alley derives no aid or advantage from its location there, but is and must be more or less impeded thereby. The public would be in every respect as well served if the road were on private property remote from the street its whole distance. In a word, the road is not on the alley, instead of other lands, because it is of any advantage either to the defendant or to the public that it should be there, except for economical reasons to the defendant. The construction of the track on the street cannot, therefore, be said to be in aid of the public travel for which streets are created, any more than it would be if it was part of a continuous line of railroad running through the city of Stillwater. If the use would be a new one in the latter instance, it is a new one for the same reasons in the present case, and the abutting owner is entitled to compensation upon the same principles. The fact that the cars are moved by animal power instead of steam is not a controlling consideration, and the control reserved by the city council over the manner of construction and mode of operation of the railroad is no different from that ordinarily exercised by municipal corporations, or which they have the power to exercise by legislative authority, over ordinary railroads constructed through or into cities, and across or upon the public streets thereof.

We have been referred to several cases decided by courts of high authority, in which it was held that the authorization of street railways, such as are ordinarily used in cities, is not the imposition of an additional burden upon the street, for which the owners of the servient estate are entitled to compensation; and the weight of authority is to this effect. But it is obvious that the purpose and use of an ordinary street railway are very different from those of the railroad under consideration. Street railways derive their business from the street; are intended for the convenience of the travel thereon; and may, with much force of reason, be said to be in aid of the identical use for which the street was created, and not a new and independent use. It is to be observed that it is becoming common for transfers of cars in cities, from one line of railroad to another, to be made by an independent transfer company, owning its own tracks; and there is no sufficient basis of reason or utility for a

discrimination which would deny compensation to the abutting owner for the use of his servient estate for railroad purposes by a transfer company, and uphold his right to compensation for a substantially similar and no more detrimental use by railroad companies, operating lines into or through the same cities. We are of opinion, therefore, that the use to which the defendant has put the alley is, within the adjudications of this state, the imposition of a new and additional servitude upon it.

2. It appears that block 28 in the city of Stillwater, as originally platted, extends to the waters of Lake St. Croix, through which flows the St. Croix river, a navigable stream. The lots in this block front on Main street on the west, and run back east to the lake; and there was laid down on the plat, across the lots, an alley 30 feet wide, called Stimpson's alley, running north and south through the block, upon which defendant's railroad is constructed. The plaintiff is the owner of certain of these lots. It further appears from the verdict of the jury upon certain questions submitted, that the alley and all that portion of the lots lying east of it was below low-water mark at the time the plat was made, though the lots as platted are entirely within the meander line of the government survey.

This last fact is, however, not material, as it is well settled that, in such cases, the stream and not the meander line is the boundary. That portion of the lots intended, as appears from the plat, to be subjected to the easement of a public alley, and all lying east of the alley, is "made land," having been reclaimed from the waters by filling out into the lake. When or by whom this filling was done does not distinctly appear; but inasmuch as it is found "that Stimpson's alley is a public street in the city of Stillwater, duly laid out and established, and has been in use as such for more than 15 years, and is under the care, custody, and control of the city council," it follows that a portion, at least, of the filling was done at least fifteen years ago; and as it is not claimed on the part of the defendant that the state ever undertook to assert any dominion over this made land, except as to the easement of the alley, through the power delegated by the city charter, I think it must be assumed that such filling was

done by the owners of the lots for their own use. It is not found whether the filling was done in shallow or deep water; but inasmuch as it is found "that the portion of said lot east of said alley claimed by the plaintiff fronts upon Lake St. Croix, * * * and is of value as a landing for boats and business purposes," it is to be assumed that the filling out into the lake was for the purpose of reaching navigable water, so as to make the shore available for the uses connected with the navigation of the river.

It is claimed that the plaintiff's title did not extend to lands covered by the waters of the lake, but stopped at the line of low water; and such is the law. But it is well settled that the owner of land bounded by a navigable stream has certain riparian rights which spring from the ownership of the bank, and are not dependent upon a strict legal title in him to the soil covered by the water. These rights were clearly defined by Mr. Justice Cornell in *Brisbine* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 114, as follows: "The right to enjoy free communication between his abutting premises and the navigable channel of the river; to build and maintain, for his own and the public use, suitable landing-places, wharves and piers on and in front of his land, and to extend the same therefrom into the river to the point of navigability, even though beyond low-water mark; and to this extent exclusively to occupy, for such and like purposes, the bed of the stream, subordinate and subject only to the navigable rights of the public, and such needful rules and regulations for their protection as may be prescribed by competent legislative authority." In addition to the authorities cited in the opinion in this case, the doctrine has the authority of a recent English case in the house of lords, and we are satisfied that it rests upon solid grounds of justice and utility. *Lyon* v. *Fishmongers' Company*, L. R. 1 App. Cas. 662. It does not appear that the use made of the shore in this case has caused the least impediment to the free and unobstructed navigation of the river, or has been prejudicial in any way to the public interests. These riparian rights are property, and cannot lawfully be taken for public use without compensation. *Brisbine* v. *St. P. & S. C. R. Co.*, *supra*; *Yates* v. *Milwaukee*, 10 Wall. 497. We think the

acts done by the defendant are an invasion of the riparian rights of the plaintiff.

The decision of the court below having been in accordance with the conclusions reached by us, it follows that the judgment appealed from must be affirmed.