## CATHERINE OBER v. CITY OF MINNEAPOLIS AND ANOTHER.[1]

March 14, 1930.

No. 27,706.

[1]Reported in 229 N. W. 794.

*B. A. Ober,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre, Neil M. Cronin* and *J. T. ·O'Donnell,* for respondents.

HOLT, J.

Plaintiff appeals from the order denying a new trial.

The action is for the recovery of possession in the city of Minneapolis of that part of a tunnel under an alley abutting the rear of plaintiff's 33.15-foot lot, the tunnel having been constructed and ·used up to December 1, 1928, by the defendant brewing company for transporting cases of bottles by a gravity conveyor from its bottling building, located on one side of plaintiff's lot, to its warehouse on the other side thereof. The city is made a party defendant. The brewing company's buildings are large structures of several stories, the ground dimensions being 157 feet by 156 feet and 157 feet by 132 feet, respectively. Plaintiff's lot since 1920 has been unoccupied and has no improvements. The street is occupied by several industrial railroad tracks and impassable. Defendants ·pleaded in defense an ordinance of the city granting the brewing company the right to construct, maintain, and use an underground tunnel under the half of the alley abutting its and plaintiff's lots, pursuant to the terms and conditions of which the tunnel was constructed in October, 1919. The court found that plaintiff had ·knowledge of the construction of the tunnel but that neither she nor the public has ever used it or demanded access thereto. The court also made this finding:

"In the regular course of its business, and especially during about three months of each year, it has been the practice of the defendant Minneapolis Brewing Company to transport between its warehouse and bottling house a large number of cases of bottles, such transportation being a necessary and proper incident of its business. Prior to the construction of said tunnel the convenient and customary course of such transportation was through and along the sur-

face of said alley. Since the tunnel became available the cases have been transported through it and the surface of the alley has been proportionately relieved of public traffic."

The court found that plaintiff has sustained no damage. This conclusion of law followed:

"That the construction, maintenance and use of said tunnel by the defendant Minneapolis Brewing Company * * * have not constituted and do not now constitute an additional servitude upon plaintiff's land, but have been and are an occupation and use of said alley in aid of the lawful public use thereof."

The purpose of the tunnel as stated in the ordinance was therein to lay pipes and wires to convey heat, light, steam and other commodities sold and furnished other persons by the brewing company for which the city was to derive a revenue of five per cent of the gross receipts. The tunnel has contained no pipes or wires for the transmission and sale to others of light, heat, steam or gas. The city has derived no revenue therefrom. Only a gravity conveyor was installed and used in the tunnel. The ordinance on its face amounts to no more than a license to subject the subsurface of the alley to the ordinary street uses. Conduits for light, heat and power, like sewers and water pipes, are now generally placed under the surface of public streets and are not considered as imposing additional servitude or burdens on the fee than those intended by the dedication. The public easement is not confined to the mere surface of the land dedicated as an alley or street. Appellant truly says:

"Water mains, sewers and gas pipes play their part as an auxiliary to the one time wagon supplying those needs; and the uses as such for public service are embedded as closely to the surface as reasonably practicable. * * * Use varies with form. The essence of travel is locomotion."

But we cannot agree to this claim or conclusion:

"Manifold as to mode, manner and method is its use; fixedly unalterable is its place—the highway, upon and not under or above it."

Cater v. N. W. Tel. Exch. Co. 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, 51 A. S. R. 543, supports the first statement quoted but rejects the last, and so does Coburn v. New Tel. Co. 156 Ind. 90, 59 N. E. 324, 52 L. R. A. 671; Peabody v. City of Boston, 220 Mass. 376, 107 N. E. 952, L. R. A. 1915F, 1005; 4 McQuillin, Mun. Corp. (2 ed.) § 1448, and authorities there cited. We do not think the authorities cited by appellant sustain a different view. Matter of City of New York, 215 N. Y. 109, 109 N. E. 104, L. R. A. 1916A, 1290, Ann. Cas. 1917A, 119, involved occupation of a street with railroad tracks by a contractor in building a subway under the same whereby abutters were specially injured. Bradley v. Degnon Contracting Co. 224 N. Y. 60, 120 N. E. 89, related to the question whether consequential damages resulting to an abutting owner from the building and operation of a subway railway were included in the damages for opening the street under which the subway was laid. Nothing in those cases, nor in Yale University v. City of New Haven, 104 Conn. 610, 134 A. 268, 47 A. L. R. 667, upon which appellant especially relies, can be construed as denying the right of the city of Minneapolis to grant the license to install the instrumentalities designated in the ordinance in the subsurface of this alley. The municipality in whose care and control are its streets may appropriate for use to the exclusion of the abutter not only the surface thereof but "so much of the depth as may not unfairly be used as streets are used." Cloverdale Homes v. Town of Cloverdale, 182 Ala. 419, 435, 62 So. 712, 717, 47 L.R.A.(N.S.) 607, where a private corporation had by permission of the municipality placed gas mains and water mains in streets without consent of the abutters. Thompson v. Hance, 174 Cal. 572, 163 P. 1021, involved taxation for construction of a tunnel through a high hill, the tunnel not even conforming to the street over the hill. The question of additional servitude upon the abutting property was not raised.

Now as to the case at bar. Under the general power of the city over its streets, we think the construction of a tunnel for travel under the street could have been authorized if accessible to the public. But this is no such passageway. As used in the past it was essentially for private convenience though at times it served to relieve

the alley of the excessive use required if the company had had to carry their cases along its surface from the one building to the other. The street in front, because of the railroad tracks, was not available. However we are not holding that the necessities of the brewing company nor the aid afforded public travel along the alley justified the ordinance or the construction of the tunnel adjacent to plaintiff's lot for that was not the purpose indicated in the ordinance. But we are inclined to the view that as the ordinance reads it licensed an ordinary subsurface use of the alley. A court of high standing has so held.

In Wood v. McGrath, 150 Pa. 451, 24 A. 682, 16 L. R. A. 715, the defendant had obtained permission to lay a private drain in a street past the premises of the plaintiff, an abutting owner, without his consent. The plaintiff brought suit for injunction to restrain the use of the drain claiming that it was a nuisance. Referring to Borough of Susquehanna Depot v. Simmons, 112 Pa. 384, 5 A. 434, 56 Am. R. 317, and a prior case, the decision proceeds [150 Pa. 455]:

"The learned court below, in their opinion, thought that the doctrine in the Simmons case was not applicable in this, because in that case there was no private abutting owner involved in the contest, and the right of such owner was not adjudged. But the least consideration will show that the right of a private abutting owner has nothing to do with the question. It is the extent of the municipal authority to grant the use of the street for a private purpose that is alone in question, and that authority does not depend in any degree upon the will of the abutting owner. * * *

"The conclusion, both of the master and court below, was based upon the idea that the abutting owner is the owner of the fee of the land occupied by the street, and the laying of a drain pipe under the street without his consent is an invasion of his right as owner of the land. How fallacious this proposition is, is at once apparent when it is considered that the right of the public in the streets of cities, boroughs and towns is far more extensive than the mere right to use the surface of the land for the purpose of passage. * * * It may undoubtedly, either by itself, or by its delegated

authority to others, dig up the soil to lay water pipes, gas pipes, sewers, drains, electric wires, telegraph and telephone wires, cables and doubtless subterranean railways, every one of which uses is in direct and exclusive hostility to the abutting owner's right in the fee. * * * The streets and alleys of cities, towns and boroughs are under the control and direction of these municipalities, and they have all the power over them that can lawfully exist. They are the universally recognized channels of communication between the different parts of the municipal territory, and no private interest in, or ownership of, the subsoil is permitted to interfere with the free use of both the surface and the subsoil by the municipal authorities or by their delegated substitutes. Any other doctrine would entirely frustrate all beneficial uses of the public streets and · alleys of the cities, towns and boroughs of the commonwealth. It is clear therefore that the adjoining owners have no interest in the subsoil of the street which will enable them to demand that their consent must be obtained before any uses of the subsoil of the streets can be made. It does not lie with them to say they admit that the borough authorities can use them for all public purposes but cannot permit their use for the same kind of purpose by a private citizen, because we have already decided that they can do so; and if the use permitted is of the same kind to which the surface or subsoil of the streets may be devoted, they have no more right to object in the one case than in the other."

'To the same effect is Boyden v. Walkley, 113 Mich. 609, 71 N. W. 1099.

Tunnels serve for communication. There could be no doubt of the power of a city, if travel so demanded, to have both the surface of an alley and a tunnel underneath. And it would not be straining that principle very far to·sustain the learned trial court's theory, which seems to be that the proper use of the alley for transporting the brewing company's goods from one of its buildings to the other was at periods so great that it was advisable to permit this trans-portation by means of a tunnel under the alley.

But we need not place our decision on that ground. Taking the ordinance at its face value, the kind of use authorized is the legiti-

mate street use under the decisions cited. The use to which the brewing company put the tunnel by installing the gravity conveyor may be conceded unauthorized. However the court finds that that use has ceased. Hence there is no occasion to eject the company. The court finds that plaintiff has not been damaged. That finding could not well be otherwise. For the past seven or eight years the lot has been vacant and unoccupied, and from the photographs in evidence it appears to be a dumping ground for tin cans and worthless debris. No proof was offered that its market value is diminished one penny by the presence of the tunnel or would be increased the slightest by restoring the space occupied by the tunnel to its original condition. The tunnel cannot be classed as a public nuisance. Nor can it be denominated a private nuisance of which plaintiff can complain. It does not affect the free access of air and light to plaintiff's lot. No offensive sounds or noisome matters emanate therefrom. Where an overhead bridge and an underground tunnel united a defendant's buildings, divided by a narrow street or alley, the court abated the former but not the latter since it did not injuriously affect the adjacent plaintiff. Townsend, Grace & Co. v. Epstein, 93 Md. 537, 49 A. 629, 52 L. R. A. 409, 86 A. S. R. 441.

We do not think the several assignments of error need be considered separately. The facts are nearly all stipulated. Other authorities cited by appellant state good law applicable to the facts of each case but are of little assistance to the peculiar situation here, and we refrain from referring to them.

Upon the issue of damages or the value of the use and occupation, plaintiff's offer of proof of the value of the use to defendant or how much it saved by using the conveyor we think was properly excluded. Ford Motor Co. v. City of Minneapolis, 147 Minn. 211, 179 N. W. 907.

Assuming that the brewing company's nonuse of the tunnel is an abandonment of the privilege or license granted by the ordinance, there is now no reason at all why plaintiff is not entitled to every use of the space under the alley which is ordinarily accorded an abutter by the city having the care and control of its streets, the use so granted being at all times subordinate to the right of the city

to occupy the subsurface of its streets for the ordinary street uses. Plaintiff not being damaged by any past use of the tunnel and the brewing company having now ceased all use, justice does not require the court to impose upon defendants the expense of restoring the subsoil under plaintiff's alley to its original condition, especially in view of the fact that she knew of its construction and interposed no objections thereto.

Th order is affirmed.

