John N. ALLEN, et al., petitioners,
Appellants,

v.

CITY OF MENDOTA HEIGHTS,
a municipal corporation,
Respondent.

No. A04–1278.

Court of Appeals of Minnesota.

March 29, 2005.

Mark Handley Thieroff, Gerald S. Duffy, Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, MN, for appellants.

John Michael Baker, Greene Espel, P.L.L.P., Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; HUDSON, Judge; and PORITSKY, Judge.[*]

## OPINION

TOUSSAINT, Chief Judge.

In this mandamus proceeding, appellants argue that their applications for permits to respondent City of Mendota Heights were automatically approved under Minn.Stat. § 15.99, subd. 2 (2004). Upon a citizens' petition for environmental review of appellants' project, the city tolled the running of the automatic approval period. Because the city and district court correctly interpreted an express exception in section 15.99 to allow for tolling of the deadline for agency action on the applications pending the environmental review process under the Minnesota Environmen-

tal Policy Act, we affirm. The city's motion to supplement the record is granted.

## FACTS

Appellants John Allen and Joel Buttenhoff own land in respondent City of Mendota Heights (the city). Appellant Minnstar Builders, Inc., a Ron Clark Company, executed purchase agreements with Allen, Buttenhoff, and Acacia Park Cemetery Association to buy the property for a proposed residential development with adjacent property. On November 5, 2002, Minnstar applied for preliminary plat approval, rezoning, site-plan approval, a conditional-use permit for a planned-unit development, a variance, and a street vacation.

On December 2, 2002, citizens petitioned the Minnesota Environmental Quality Board (EQB) for an environmental-assessment worksheet (EAW). On December 18 the city wrote Ron Clark of Minnstar that it had taken action on December 3 to grant conditional approval, "in this instance meaning only a vote of confidence, for the application based on nine conditions." The letter also stated that on December 17 the city council had met again and taken further action on the rezoning, conditional use permit, variance, and preliminary plat. The council continued the development-application matters and the EAW petition to its next meeting on January 7, 2003. It also extended the 15–day period for deciding the EAW petition and the 60–day deadline for the rezoning and other matters under Minn.Stat. § 15.99 (2004). The letter indicated that the 60–day period was stayed by the EAW process on December 9 when it was designated the Responsible Governmental Unit (RGU) for the EAW petition, and that the 60–day period would begin to run either after the council de-

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI § 10.

cides no EAW is warranted or after the environmental-review process is complete.

On January 7, 2003, the city resolved that pursuant to its consideration of the citizens' petition for environmental review, an EAW would be prepared. On February 19, Minnstar submitted data for the EAW. On November 24, by resolution of the city council, the city made a positive declaration of the potential for significant environmental effects requiring preparation of an environmental-impact statement (EIS).

Appellants petitioned the district court for a writ of mandamus compelling the city to grant Minnstar's various written requests or, alternatively, compelling the city to show cause why the written requests should not be approved. Appellants moved for summary judgment, and the city moved for judgment on the pleadings. The district court filed an order granting the city's motion and dismissing the petition. Appellants filed a notice of appeal, and the city filed an unopposed motion to supplement the record.

## ISSUE

Is the 60–day deadline for agency action under Minn.Stat. § 15.99, subd. 2 (2004) extended by subdivision 3(d) of that statute when citizens initiate the environmental review process with a petition for an environmental-assessment worksheet under the Minnesota Environmental Policy Act, Minn.Stat. Ch. 116D (2004)?

## ANALYSIS

■ When the facts are undisputed and the issuance of a writ of mandamus turns on purely legal determinations, this court need not defer to the district court's decision. *Castor v. City of Minneapolis,* 429 N.W.2d 244, 245 (Minn.1988).

■ This action concerns the interpretation and application of Minn.Stat. § 15.99 (2004), which requires agencies to take action on written requests within 60 days, and its interplay with the Minnesota Environmental Policy Act, Minn.Stat. Ch. 116D (2004) (MEPA). Specifically, this action presents an issue of first impression: whether a citizens' petition for environmental review under MEPA tolls the running of the 60–day period for city action under Minn.Stat. § 15.99, subd. 2.[1] The city argues that the 60–day deadline for agency action is tolled by Minn.Stat. § 15.99, subd. 3(d), when environmental processes under MEPA are initiated. We agree.

"We review questions of statutory construction de novo." *Houston v. Int'l Data Transfer Corp.,* 645 N.W.2d 144, 149 (Minn.2002). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2004). When interpreting a statute, this court first determines whether the statute's language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). A statute is only ambiguous when its language is subject to

1. Previous cases before this court have involved tolling of the 60–day period due to environmental review. In one case the deadline had been extended by operation of subdivision 3(e), *Northern States Power v. City of Mendota Heights,* 646 N.W.2d 919, 922 (Minn. App.2002) (stating fact that 60–day period of subdivision 2 was "suspended pending completion of proceedings before the Minnesota Environmental Quality Board (MEQB)," pursuant to subdivision 3(e)), *review denied* (Minn. Sept. 25, 2002). In *Kramer v. Otter Tail County Bd. of Comm'rs,* 647 N.W.2d 23, 25 (Minn.App.2002), the parties assumed that subdivision 3(d) tolled the 60–day period, but argued whether the 60–day period recommenced on the day after the negative declaration for an EIS was filed or if the appeal period for a negative declaration added another 30 days to the 60–day period.

more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). "Where the legislature's intent is clearly discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted and courts apply the statute's plain meaning." *Am. Tower*, 636 N.W.2d at 312.

Section 15.99 was part of a bill relating to public administration and designed to improve efficiency and operation of the government. 1995 Minn. Laws ch. 248, at 2415. At all levels of government, the statute imposes a 60–day time deadline for agencies to act on certain written requests. Minn.Stat. § 15.99, subds. 1, 2 (defining "agency" and setting deadline). Subdivision 2, setting the deadline for the agency's response, states:

> Except as otherwise provided in this section … and notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request relating to zoning, septic systems, or expansion of the metropolitan urban service area for a permit, license, or other governmental approval of an action. Failure of an agency to deny a request within 60 days is approval of the request. If an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request.

*Id.*, subd. 2(a). The legislature contemplated the need for extensions and rules on time computation of the 60–day period, which are addressed in six subsections of subdivision 3 of the statute. The provision at issue here is subdivision 3(d) which states:

> The time limit in subdivision 2 is extended if a state statute, federal law, or court order requires a process to occur before the agency acts on the request, and the time periods prescribed in the state statute, federal law, or court order make it

impossible to act on the request within 60 days. In cases described in this paragraph, the deadline is extended to 60 days after completion of the last process required in the applicable statute, law, or order. Final approval of an agency receiving a request is not considered a process for purposes of this paragraph.

*Id.*, subd. 3(d).

MEPA is the state statute that the city claims extends the 60–day deadline for agency action because it "requires a process to occur before the city acts" on appellants' requests for rezoning under subdivision 3(d) of section 15.99. The city argues that the MEPA "process" includes the steps involved in a petition for an environmental-assessment worksheet (EAW), the determination of whether an environmental-impact statement (EIS) is required, and, if required, the steps to prepare the EIS.

Pursuant to MEPA, the Environmental Quality Board (EQB) has promulgated rules that, in most cases, involve a three-step environmental-review process with timeframes for each step. Minn.Stat. § 116D.04; Minn. R. 4410.1000–4410.3000 (2003) (setting out general process from citizens' petition through EIS preparation). First, there are various means to initiate environmental review. When, as here, mandatory and discretionary review provisions do not apply to the project, a petition signed by at least 25 individuals initiates environmental review. Minn. R. 4410.1000–4410.1100. The provisions governing the petition allow up to 40 days from the date the proposer is notified of the petition for the RGU to decide the need for an EAW and to notify the proposer and others of its decision. Minn. R. 4410.1100. Second, upon the RGU's decision that an EAW is required, there is a process for its preparation. Minn. R.

4410.1400–4410.1700 (2003). It begins with the proposer submitting, with no specific deadline for compliance, data to the RGU. Minn. R. 4410.1400. When the RGU deems the submittal for the EAW complete, specific steps with time periods are provided to complete the EAW process. From the date the submittal is deemed complete, the RGU has up to 75 days, not including adequate time to publish notice and to hold public meetings, to complete the EAW process. Minn. R. 4410.1400–4410.1600. Third, upon a declaration that an EIS is required, the EIS preparation process is initiated. The EIS shall be prepared and its adequacy determined within 280 days after notice of its preparation, unless the time is extended. Minn.Stat. § 116D.04, subd. 2a(g).

We conclude that a plain reading of section 15.99 and MEPA unambiguously supports a tolling of the 60–day time period for agency action until completion of the environmental-review process under MEPA. Subdivision 3(d) expressly extends the 60–day period if (1) a state statute requires a process to occur before the agency acts and (2) the time periods prescribed in the state statute make it impossible to act within 60 days.

We think it is clear that MEPA requires a process to occur before the city acts on written requests for action on a proposed development. First, MEPA mandates that "to the fullest extent practicable the policies, rules and public laws of the state shall be interpreted and administered in accordance with the policies set forth in [MEPA]." Minn.Stat. § 116D.03, subd. 1. Second, MEPA and the environmental-review rules specifically mandate that environmental review of projects take priority by prohibiting granting a permit, approving a project, or beginning a project until the environmental-review process is complete. Minn.Stat. § 116D.04, subd. 2b;

Minn. R. 4410.3100 subd. 2 (2003). Third, MEPA instructs all state agencies to "identify and develop methods and procedures that will ensure that environmental amenities and values, whether quantified or not, will be given at least equal consideration in decision making along with economic and technical considerations." Minn.Stat. § 116D.03, subd. 2(3); *see also No Power Line, Inc. v. Minn. Envtl. Quality Council,* 262 N.W.2d 312, 327 (Minn. 1977) (stating that MEPA "force[s] agencies to make their own impartial evaluation of environmental considerations before reaching their decisions").

We also conclude that a plain reading of section 15.99, together with MEPA, makes action by the city on the environmental-review process impossible within the 60–day period. It is conceivable that the first step of that process, in this case, a decision on the citizens' petition for an EAW, could be completed within 60 days. But section 15.99, subdivision 3(d) does not require breaking down a statutory "process" into parts and applying the impossibility standard to each of the parts. *See* Minn.Stat. § 645.08(1) (2004) (words and phrases are construed according to their common and approved usage). The express language of subdivision 3(d) contemplates that a statute could require more than one "process" when it clarifies that "the [60–day] deadline is extended to 60 days after completion of the *last* process required in the applicable statute." Minn.Stat. § 15.99, subd. 3(d) (emphasis added). At the time the petition for an EAW is filed and the proposer is notified thereof, it is uncertain what process will be the "last" process and how long the process will take. The rules acknowledge as much by prohibiting action on a project until either an EAW petition is dismissed, a negative declaration on the need for an EIS is issued, an EIS is determined adequate, or a variance is granted. Minn. R. 4410.3100. subp. 1.

Thus, the plain language of subdivision 3(d) tolls the running of the 60–day period from the time the citizens'· petition is filed until after MEPA's environmental process is completed.

■ The city moved to supplement the record on appeal with three items to show that environmental review was part of several Minnesota cases involving Minn.Stat. § 15.99. Appellants did not oppose the motion. Because all of the items included in the supplement fall within "publicly available articles that were not previously presented to the district court," *Fairview Hosp. v. St. Paul Fire & Marine Ins. Co.*, 535 N.W.2d 337, 340 n. 3 (Minn.1995), we grant the motion to supplement.

## DECISION

Because a citizens' petition for an environmental-assessment worksheet under Minnesota's Environmental Policy Act initiated a process that must occur before agency action on a written request under Minn.Stat. § 15.99, subd. 2 (2004), and that made it impossible to act within 60 days, the 60–day deadline of section 15.99 is extended by subdivision 3(d) to 60 days after completion of the last environmental-review process required by MEPA.

**Affirmed; motion granted.**